IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CHRISTOPHER ODOM, ) | Civil Action No. 3:06-3417-PMD-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| S.C.D.C. TRANSPORTATION FNU LNU, ) | |
| INSURANCE POLICY HOLDER; ) | |
| MRS. FNU ROBINSON; ) | |
| MR. FNU LIVINGSTON; AND ) | |
| S.C.D.C. MEDICAL KIRKLAND/WATEREE ) | |
| STAFF, ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| ) | |

Plaintiff filed this action on December 5, 2006.[1] At the time of the alleged incidents, Plaintiff was an inmate of the South Carolina Department of Corrections ("SCDC"). He was subsequently released from SCDC custody. Defendants filed a motion for summary judgment on May 15, 2007. Plaintiff, because he is proceeding pro se, was advised on May 21, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response on June 19, 2007.

MOTION FOR SUMMARY JUDGMENT

Plaintiff appears to allege that Defendants subjected him to cruel and unusual punishment by failing to provide him with medical care after a prison bus (in which he was a passenger) was involved in an accident. He may also be attempting to assert a claim concerning his confinement

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because these are dispositive motions, this Report and Recommendation is entered for review by the court.

in administrative segregation.[2] Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff failed to identify an expert on the standard of care or its breach; (2) Plaintiff's injury, if any, is de minimis in nature; (3) the Eleventh Amendment bars suit against these Defendants in their official capacities; and (4) the doctrine of qualified immunity bars suit against these Defendants in their individual capacities.

    1.    <u>Medical Claims</u>

Plaintiff alleges that Defendants failed to treat him for back and neck injuries he sustained after a February 28, 2005 bus accident. Defendants provide that a bus accident occurred on February 28, 2005 (while Plaintiff was being transferred by SCDC to another facility), when the gate guarding one of SCDC's facilities closed on the SCDC bus while it was passing through the check point. They further provide that the gate broke a side mirror on the bus. Defendants' Motion for Summary Judgment at 2.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id.</u>, quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
>                   \* \* \* \* \* \* \*
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia,</u> supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying

---

[2]Plaintiff also states that he is being held beyond his "max-out" date. As noted above, however, he has been released from SCDC custody. Plaintiff has another pending action (Civil Action Number 3:07-00343-PMD-JRM) in which he alleges he was kept in SCDC custody beyond the time for which he was sentenced.

or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and

3

> if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Review of Plaintiff's SCDC medical records and affidavits from SCDC medical personnel reveals that Plaintiff was examined on February 28, 2005 by Dana Reynolds, a registered nurse. Nurse Reynolds noted that Plaintiff complained of discomfort to his lower back and neck and refused to speak. He was noted to be in no apparent distress, although he was given an order to report for medical follow up concerning his elevated blood pressure. On March 9, 2005, Plaintiff was examined by Carolyn Armond, a licensed practical nurse, after an alleged use of force by security officers. Plaintiff claimed that the middle of his back and right side of his neck hurt. It was noted, however, that he ambulated with a normal gait, had good range of motion of his upper body, had no signs of inflamation in his back or neck area, and had no weakness of his lower extremities. Nurse Armond noted that Plaintiff's examination was normal, instructed him to return as needed, and told him to take Tylenol or Ibuprofen as needed. On March 15, 2005, Plaintiff was examined by Nurse Armond and by Terri I. Huff-Simmons, a nurse practitioner. NP Huff-Simmons noted that Plaintiff had full range of motion of his neck, his spine was in good alignment, and he was able to stand and move quickly while describing what happened to him. She states that Plaintiff had no inflamation and no marks, scratches, or bruising on his neck or body. On March 17, 2005, x-rays of Plaintiff's cervical spine were taken which were reportedly normal, showing no signs of fracture,

4

subluxation, developmental segmentation, or degenerative disease. Huff-Simmons Aff. With his opposition memorandum, Plaintiff has submitted a copy of discharge instructions from his visit to the Medical University of South Carolina Emergency Services Department in June 2006 (more than a year after the alleged bus accident). It was noted that Plaintiff had chronic back pain and would not speak. He was instructed to take Ibuprofen for pain and to schedule follow up care. There is simply nothing in this record that indicates that Plaintiff's back pain or muteness (which he appears to assert for the first time in his opposition memorandum) was caused by the February 2005 accident or any lack of medical care thereafter.[3]

To the extent that Plaintiff disagrees with the treatment given, his claim also fails. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

---

[3]Plaintiff did not allege a claim concerning muteness in his Complaint. To the extent that Plaintiff is now attempting to claim that he is mute because of the February 28, 2005 accident, it should be noted that his medical records indicate that this alleged condition predated the accident. On January 7, 2005, Plaintiff claimed he sustained a choking injury while at Charleston County Jail (prior to his incarceration at SCDC); on January 11, 2005, he only would speak in a whisper and later indicated he could not speak; and on February 22, 2005, he would not respond to a nurse's questions.

5

    2.          Administrative Segregation

To the extent that Plaintiff is attempting to allege that his constitutional rights were violated because he was placed in administrative segregation, his claim should be dismissed sua sponte.[4] Plaintiff fails to show that his constitutional rights were violated by his placement in administrative segregation or lock-up. Prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483. In Sandin, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Under the analysis set forth in Sandin, Plaintiff cannot show that he

---

[4] With his memorandum in opposition to summary judgment, Plaintiff has submitted a disciplinary report and hearing record indicating that he lost good time, canteen privileges, and phone privileges for failing to begin or complete a work assignment (on March 9, 2005) for a legitimate reason (such as illness). To the extent that Plaintiff is attempting to assert a due process claim concerning his disciplinary hearing, his claim fails. A prisoner is entitled to only a minimal standard of due process in the prison disciplinary setting. The following requirements are sufficient to satisfy this minimal standard of due process:
1.     Advance written notice of the charges;
2.     A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and
3.     The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

Wolff v. McDonnell, 418 U.S. 539, 563-576 (1974). The records submitted by Plaintiff indicate that he was given advanced written notice of the charges, the right to call witnesses, and a written statement citing the evidence relied on and the reason for the action taken.

has a protected liberty interest in his security or custody classification. Id. at 483-85; see Backey v. South Carolina Dep't. of Corrections, 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996)[Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), aff'd, 121 F.3d 699 (4th Cir. 1997).

    3.    Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly

8

established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

    4.    <u>State Law Claim</u>

Plaintiff may also be attempting to assert claims under South Carolina law. Any such claims are based on state law and premised on supplemental jurisdiction. Defendants contend that they are entitled to summary judgment because Plaintiff has failed to identify an expert on the standard of care or its breach by Defendants.[5] As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 21) be granted, and that Plaintiff's claim concerning his placement in administrative segregation be dismissed sua sponte.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

September 26, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[5] Unless causation is a matter of "common knowledge," under South Carolina law, expert testimony is required to establish proximate cause in malpractice cases. <u>Bamlette v. Charter-Medical-Columbia</u>, 393 S.E.2d 914 (S.C. 1990); <u>Tumblin v. Ball-Incon Glass Packaging Corp.</u>, 478 S.E.2d 81 (S.C. Ct. App. 1996).

9

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).